18807.   THOMPSON *v.* ANDERSON.

DECIDED MARCH 2, 1929.

*C. L. Cowart,* for plaintiff.   *J. T. Grice,* for defendant.

STEPHENS, J.   H. L. Thompson sued C. A. Anderson in trover to recover the value of some timber which it was alleged the defendant on or about the first of May 1927, cut and carried away from land belonging to the plaintiff.   The sole issue presented was whether the land from which the timber had been cut was the property of the plaintiff or was the property of one Kicklighter

from whom the defendant had bought the timber. The question as to the title of the land from which the timber was cut is dependent upon the location of the dividing line between the land of the plaintiff and that of Kicklighter. Irrespective of the description in the deed under which the plaintiff claims the question as to the title of the land from which the timber was cut in as far as the deeds are concerned is to be determined solely by a consideration of the deed under which Kicklighter claims title.

This deed to Kicklighter, which was dated April 27, 1898, conveyed to him "All the land covered by the waters of a water mill lying between the two parties and on Slade's Branch; said branch being the line dividing Liberty and Tattnall, and been known as E. Kicklighter's Mill for several years. Also said mill is included with said land." The plaintiff was the owner of the land located north of Kicklighter's Mill pond, and the establishment of the dividing line between the plaintiff's land and this mill pond will determine whether or not the trees from which the timber was cut were located on the plaintiff's land or within the land described in the deed conveying the land covered by the waters of the mill pond to Kicklighter.

It is unquestionably true, as is established by the undisputed testimony, that the timber which was cut was at the time located upon dry land at least fifty yards north of the northern boundary of the land actually at that time covered by the water of the mill pond. If this northern boundary of the water then in the pond was the northern boundary of Kicklighter's land, which, under his deed, was covered by the waters of the pond, the plaintiff's title to the land upon which the timber rested is unquestionably established. The defendant claims however, that the northern boundary of Kicklighter's land is further north and above the place where the timber was located before it was cut. In support of the defendant's contention Mr. Kicklighter testified that he had been in possession of the land covered by the waters of the mill pond since 1898 which, at the date of his testimony, which was December 1927, was less than thirty years. He also testified that he had not raised the mill dam within thirty years, and that he had "kept so near an average head of water all the time until it is plainly marked by the water on the dam and trees," that years ago he had marked a tree up the branch to which he "claimed," and which was level with the water

mark on his dam, that this tree was above the location of the timbers cut by the defendant and he engaged a Mr. Bacon to find the water level about the trees with the mark on the dam, and that Mr. Bacon found that the tree referred to by Mr. Kicklighter as being on the dividing line was on the level with the mark on the dam. Mr. Kicklighter testified the mill waters covered the land where these trees were located, that when he got "anything like a standing head of water" the water backs up the branch and overflows this land, even overflows the land above where the last tree was cut," that, "in the low places and between the trees when the water is full it is sometimes knee deep where some of these trees are." Mr. Bacon testified that by the use of an instrument known as a water level he found that when the water was at full head up to the mark on the dam it would back up above the place from which the timbers were cut. He further testified however, that with the water at full head it "would not cover the ground up there, but only be an inch or two deep in the gullies and low places between the trees, and the water at this stage would not touch the trunk or bodies of the trees [meaning the trees from which the timber was cut] for the reason that the trees were on tussock above the level." The plaintiff testified that the water in the mill pond never backs up as far as the trees from which the timber was cut except when the pond is extremely full and then the water only fills the gullies and low places between the trees an inch or two deep, that the water never did at any time touch the trunk or the body of the trees at any place, that when the pond is full he could walk dry footed on the ground to the stumps of any of these trees.

The court charged the jury that the deed conveying to Kicklighter the land covered by the waters of the mill pond conveyed to Kicklighter only the land covered by the water when at the low water mark.

The jury found for the defendant. The plaintiff moved for a new trial upon the general grounds and upon an exception to the charge of the court to the effect that Kicklighter could establish a title by prescription to the land from which the timber was cut. This charge was invoked in the presence of the jury by the attorney for the defendant, and as given to the jury reads as follows: "I charge you that seven years possession under color of title gives title by prescription. However, that principle of law does not

apply to adjoining land-owners, where the land is wild. Now there must be actual possession before that could apply to adjoining land-owners. In other words, if two of you own wild land and one of you has had posession for twenty years, and another for ten years, neither would have the right to claim title over the other unless you had actual possession. Just the fact that you had a deed would not give you a right of claim unless you had some actual possession. I will charge you this principle of law which I think will cover it; that if you find that Mr. Kicklighter was in possession of a part of the tract of land, that his possession was such as to notify and put the world on notice as to the extent of his boundaries, and the same thing would be true of Mr. Thompson. I think that covers it."

It is not necessary to add anything further to what is said in the headnotes.

*Judgment reversed. Jenkins, P. J., and Bell, J., concur.*